**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: ANDREA P.
SHERMAN; RICHARD G. SHERMAN,
                          *Debtors,*

_____

RICHARD G. SHERMAN,
                          *Appellant,*

          v.

SECURITIES AND EXCHANGE
COMMISSION,
                          *Appellee.*

No. 09-55880

D.C. No.
2:08-cv-02517-CAS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
October 7, 2010—Pasadena, California

Filed September 19, 2011

Before: Raymond C. Fisher and Jay S. Bybee, Circuit
Judges, and Lyle E. Strom, Senior District Judge.*

Opinion by Judge Bybee;
Dissent by Judge Fisher

_____

*The Honorable Lyle E. Strom, Senior District Judge for the U.S. District Court for Nebraska, Omaha, sitting by designation.

## COUNSEL

M. Jonathan Hayes, Law Offices of M. Jonathan Hayes, Northridge, California, for the appellant.

Hope Hall Augustini, Senior Litigation Counsel, Securities and Exchange Commission, for the appellee.

## OPINION

BYBEE, Circuit Judge:

Ordinarily, an individual's debts may be discharged in Chapter 7 bankruptcy under 11 U.S.C. § 727. However, a debt may not be discharged if it results from a violation of state or federal securities laws. 11 U.S.C. § 523(a)(19)(A)(i). The question in this case is whether the exception to discharge in § 523(a)(19)[1] applies when the debtor himself is not culpable for the securities violation that caused the debt. The bankruptcy court held that the debt was subject to discharge; the district court disagreed and held that the debt was excepted

---

[1]For purposes of brevity, unless otherwise indicated, references to statutory sections throughout this opinion will refer to sections of the Bankruptcy Code (Title 11).

from discharge in bankruptcy. We agree with the bankruptcy court that the exception to discharge applies only to those who have themselves violated the securities laws. We thus reverse the judgment of the district court.

I

We have previously described the facts in this case, which we will relate briefly. *See In re Sherman* ("*Sherman I*"), 491 F.3d 948, 953-56 (9th Cir. 2007). In 1997, the SEC instituted an enforcement action against several companies, which, among other things, led to the court appointment of a receiver.[2] *See id.* at 953-54 & n.3 (citing *SEC v. Whitworth Energy Res. Ltd.*, 243 F.3d 549 (9th Cir. 2000) (unpublished table decision)). Debtor-Appellant Richard Sherman is an attorney who represented some of the defendants in this enforcement action. *Id.* at 954.

As part of the enforcement action, the receiver ordered Sherman to disgorge two separate sums of money. *Id.* First, he was ordered to disgorge $54,980 that he withdrew from his clients' litigation trust account in violation of a freeze order issued by the district court. *Id.* This debt is not at issue in this case. Second, the receiver ordered Sherman to return money he had received and retained, but had not earned, in a separate contingency case. *Id.* at 954-55. The district court calculated

---

[2]The receiver was, in relevant part,

> immediately authorized, empowered, and directed . . . to employ attorneys and others to investigate and, where appropriate, to defend, institute, pursue, and prosecute all claims and causes of action of whatever kind and nature which may now or hereafter exist as a result of the activities of present or past employees or agents of Whitworth, Williston, Amerivest and their subsidiaries and affiliates, including but not limited to *Insured Energy Drilling Program 1986-4, a limited partnership, et al. v. Trust Company of the West, a California trust company, et al.*, Case No. BC 108-297, pending in Los Angeles County Superior Court.

*Sherman I*, 491 F.3d at 953 n.2 (internal quotation marks omitted).

that he was responsible for disgorging $581,313.43 plus interest. The court held that Sherman lacked any interest in the money because he was obligated by the California Rules of Professional Conduct to return the amount by which his advances exceeded his ultimate fee. Importantly for our purposes, the SEC conceded that Sherman had not been found to have committed any securities violations on his own. *See id.* at 974 n.33 ("[T]he present case involves a debtor who was not found to have himself violated the securities laws and has not been alleged to have committed other acts of fraud by the SEC.").

Four days before the hearing on the disgorgement motion, Sherman and his wife filed a petition for Chapter 7 bankruptcy. *Id.* at 954. The SEC and the receiver responded by filing a motion to dismiss the petition. *Id.* at 955. The receiver independently filed a motion seeking a determination by the court that Sherman's debts arising from the disgorgement order should be held nondischargeable under § 523(a)(4) and (6)[3] of the Bankruptcy Code. *Id.* The bankruptcy court denied the motion, and the SEC appealed to the district court, which reversed. *Id.* at 955-56. While the appeal was pending, the bankruptcy court granted Sherman a discharge under 11 U.S.C. § 727. *Id.* at 955. In *Sherman I*, we addressed a number of standing-related questions[4] and held that Sherman's conduct did not constitute "cause" sufficient to warrant dis-

---

[3]Section 523(a)(4) creates an exception to discharge for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(6) excepts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."

[4]Specifically, we held that because the disgorgement judgment gave the SEC an enforceable right against Sherman that had not been extinguished by a settlement agreement, the SEC was considered a creditor with respect to the disgorgement order and therefore had Article III standing to seek dismissal of the Shermans' bankruptcy petition. *Sherman I*, 491 F.3d at 965. We also held that the bankruptcy court's entry granting discharge under § 727 did not moot the appeal because it did not terminate the bankruptcy petition. *Id.*

missal under § 707(a) of the Code, which allows a bankruptcy court to dismiss petitions filed in bad faith. *Id.* at 975. We then mentioned that "the SEC could have filed—and still could file—a complaint under § 523(a)(7) or (19)," though we did not explicitly conclude whether the SEC would prevail under either provision.[5] *Id.* at 975 n.39.

In a subsequent adversary proceeding, the Shermans sought declaratory relief to establish that their debt to the SEC had been discharged under § 727 notwithstanding § 523(a)(19)'s discharge exception. The bankruptcy court granted summary judgment for the Shermans. It concluded, as a matter of law, that the SEC's disgorgement order did not arise from a violation of securities laws. It further ruled that "[s]ection 523(a)(19) was intended to apply to 'wrongdoers' and not to persons who are simply found to owe a debt which the SEC is authorized to enforce."

The SEC appealed to the district court, which reversed the bankruptcy court. The district court adopted a broad interpretation of § 523(a)(19), treating as paramount the Sarbanes-Oxley Act's goal of "protect[ing] investors by improving accuracy and reliability of corporate disclosures made pursuant to the securities laws." It expressed particular concern that "[r]eading a limitation into the SEC's ability to enforce its powers to obtain disgorgement of ill-gotten funds in an appropriate case . . . would frustrate the ability of the SEC to enforce the federal securities laws." Sherman appeals.[6]

---

[5]We also noted that the SEC was time-barred from seeking nondischargeability under § 523(a)(2), (4), (6), and (15). *Sherman I*, 491 F.3d at 975 n.39.

[6]We review de novo a district court's decision on appeal from a bankruptcy court. *Greene v. Savage* (*In re Greene*), 583 F.3d 614, 618 (9th Cir. 2009). We review the bankruptcy court's conclusions of law de novo, but defer to its factual findings unless they are clearly erroneous. *Id.*

## II

We begin by making it clear that, in this case, the validity of the disgorgement order against Sherman is not at issue. We have previously held that a so-called "nominal defendant" may be ordered to disgorge funds that are traceable to fraud. *See SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998) ("[A]mple authority supports the proposition that the broad equitable powers of the federal courts can be employed to recover ill gotten gains for the benefit of the victims of wrongdoing, whether held by the original wrongdoer or by one who has received the proceeds after the wrong."). The courts can order the disgorgement of proceeds of fraud held by "nominal defendants" because they " 'hold[ ] the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute.' " *Id.* at 676 (quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)). A nominal defendant is "not a real party in interest because 'he has no legitimate claim to the disputed property.' " *SEC v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007) (quoting *Colello*, 139 F.3d at 676).[7] We found that Sherman "was effectively acting as a depository for those funds, as he legitimately obtained them in the first place but no longer had a valid claim to retain them," and thus could be ordered to disgorge "money . . . retained in excess of his fee for the services rendered in the contingency suits." *Sherman I*, 491 F.3d at 959.

The only question at issue here is whether Sherman's debt resulting from the disgorgement order can be discharged

---

[7]In *Ross*, we carefully distinguished between someone, such as an "employee or vendor," who "receive[s] compensation in return for services rendered," and someone who receives funds as a result of his "own violations of the securities laws." *Ross*, 504 F.3d at 1142. Here, as in *Ross*, "nothing in the underlying [securities] action establishes that [Sherman] has violated the securities laws. He was not a party to that action and, so far as we can tell, had no reason to know that his own activities in connection with [the companies] were in question." *Id.* No adverse inference may be derived from the fact that Sherman is subject to a disgorgement order.

under § 727 of the Bankruptcy Code ("Code"), or whether it falls under the exception to discharge created by § 523(a)(19). The Code provides, in relevant part, that "[a] discharge under § 727 . . . does not discharge an individual from any debt," § 523(a), that is for

> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security
> . . .

11 U.S.C. § 523(a)(19)(A). The bankruptcy court, siding with Sherman, held that a debt cannot be "for" a securities violation when the debtor has not committed such a violation. The district court, siding with the government, held that § 523(a)(19) is not limited to "persons who have been accused or found guilty of violations of the securities laws." Although the question is a close one, we agree with the bankruptcy court and hold that § 523(a)(19) only prevents the discharge of a debt for a securities violation when the debtor is responsible for that violation.

### A

**[1]** We begin with the statute. The question is whether a debt can be "for" one of the violations listed in § 523(a)(19)(A) when the debtor has not committed any of those violations. The dictionary definition of the word "for" does not give us a clear answer. The word "for" is capacious, meaning, among other things, "[a]s the price of, or the penalty on account of"; "[i]n requital of"; or "[i]n order to obtain"; and "[i]n consequence of, by reason of, as the effect of." VI OXFORD ENGLISH DICTIONARY 24-26 (2d ed. 1989), *available at*

http://www.oed.com/view/Entry/72761. On the one hand, in some sense, Sherman's debt was "the penalty on account of" the securities violations committed by his clients. On the other hand, we cannot say that Sherman owes the debt "in requital of" fraudulent conduct — Sherman's debt results from the fact that he never "earned" the money he owes, and not because he committed any wrongdoing.

The plain language of the statute alone does not clearly resolve the interpretive question before us. But it does bring into focus the interpretive dilemma in reading § 523(a)(19)(A): Should that section be read as if it said that a debt shall not be discharged if it "is for the violation *by the debtor* of any of the Federal securities laws"? Or, should the section be read as if it said that a debt shall not be discharged if it "is for the violation *by the debtor or anyone else* of the Federal securities laws"?

The government encourages us to focus on the absence of any explicit textual indication that the underlying violation must be committed by the debtor. Essentially, the government supports a bright-line interpretive rule: if the text of a discharge exception does not contain the limiting words "by the debtor" (or equivalent language), then the exception must be given its broadest natural reading.

There is some merit to the government's argument. Indeed, the text of a number of other discharge exceptions specifically targets debts resulting from the conduct of the debtor. *See, e.g.*, 11 U.S.C. § 523(a)(2)(B) (exception for fraudulent written statements "that *the debtor* caused to be made or published with intent to deceive (emphasis added)); *id.* § 523(a)(6) (exception for debts "for willful and malicious injury *by the debtor* to another entity or to the property of another entity" (emphasis added)); *id.* § 523(a)(8)(B) (exception for educational loans "incurred *by a debtor* who is an individual" (emphasis added)); *id.* § 523(a)(9) (exception "for death or personal injury caused *by the debtor's* operation of

a motor vehicle, vessel, or aircraft [while intoxicated]" (emphasis added)); *id.* § 523(a)(15) (exception for spousal and child support payments "incurred *by the debtor*" in the course of divorce or separation proceedings (emphasis added)). The government's argument is corollary to the familiar doctrine of *inclusio unius est exclusius alterius* (the inclusion of one is the exclusion of another). When Congress included the phrase "by the debtor" in these discharge exceptions, it excluded application of the discharge exception to all others. Conversely, it is a reasonable inference that, when Congress omitted the phrase "by the debtor" in § 523(a)(19)(A)(i), it intended to cover debtors and others to whom the exception might reasonably apply. We might therefore conclude that Congress knew how to make it clear that a discharge exception should apply only to debtor-wrongdoers. *Cf., e.g.*, *Astrue v. Ratliff*, 130 S. Ct. 2521, 2527 (2010) (concluding that "the [Social Security Act]'s express authorization of . . . payments [to prevailing claimants' attorneys] . . . shows that Congress knows how to make fees awards payable directly to attorneys where it desires to do so," and rejecting the claim that 28 U.S.C. § 2412(d) should therefore be interpreted to authorize fee compensation to a prevailing litigant, and not her attorney); *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010) ("The contrast between [29 U.S.C. § 1132(g)(1) and (2)] makes clear that Congress knows how to impose express limits on the availability of attorney's fees in ERISA cases.").

We do not think this point, although based on sound principles of statutory interpretation, is the end of the analysis. A number of other discharge exceptions in § 523 do not explicitly refer to the debtor's conduct, even though at first glance, they seem to be best interpreted as targeting only debtors who are also wrongdoers. *See, e.g.*, 11 U.S.C. § 523(a)(2)(A) (exception for debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or

an insider's financial condition"); *id.* § 523(a)(4) (exception for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"); *id.* § 523(a)(5) (exception for debts "for a domestic support obligation").

For example, § 523(a)(2)(A) creates an exception to discharge for debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . actual fraud." Even though the text of the statute does not state that the fraudulent conduct must have been the debtor's, we have nonetheless incorporated that assumption into our understanding of the provision. *See, e.g.*, *Ghomeshi v. Sabban* (*In re Sabban*), 600 F.3d 1219, 1222 (9th Cir. 2010) ("[M]aking out a claim of non-dischargeability under § 523(a)(2)(A) requires the creditor to demonstrate . . . [that] *the debtor* made representations; . . . that at the time he knew they were false; [and] that he made them with the intention and purpose of deceiving the creditor." (emphasis added)); *Citibank v. Eashai* (*In re Eashai*), 87 F.3d 1082, 1086 (9th Cir. 1996) ("[T]o prove actual fraud, a creditor must establish . . . that *the debtor* made the representations . . . ." (emphasis added)). In fact, we have recently suggested that the debtor's involvement in the fraudulent activity might be the *only* relevant consideration in determining whether the exception applies. *See Sabban*, 600 F.3d at 1222 (holding that a debtor need not have received a benefit from the fraudulent activity in order for § 523(a)(2)(A) to prevent a discharge).

**[2]** We have read § 523(a)(4) in a similar fashion. Although the statute only prohibits the discharge of debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"—again, without any mention that the misconduct must have been by the debtor—we have strongly suggested that it applies only in cases where the debtor is responsible for the misconduct. *See, e.g.*, *Cal-Micro, Inc. v. Cantrell* (*In re Cantrell*), 329 F.3d 1119, 1128 (9th Cir. 2003) (rejecting a claim under § 523(a)(4) because the defendant was not a fiduciary).

A contrary reading of these provisions would extend the discharge exceptions to the "honest but unfortunate debtor," *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934), in cases where the debtor was unwittingly involved with, and unknowingly received benefits from, a wrongdoer. For example, suppose we had not construed § 523(a)(2)(A) to apply only in those cases where the debtor committed the fraud. Suppose, further, that a bank loaned money to an innocent person under the express condition that the loan be guaranteed by a third party who had greater assets. If the third party lies about his assets in order to qualify to be the guarantor, then the borrower will have, in effect, obtained "money . . . by . . . false pretenses, a false representation, or actual fraud," even if she did not know or have reason to know about the guarantor's misconduct. If she is subsequently unable to repay her loan and is driven to bankruptcy, we think it would contravene the "fresh start" purposes of the system to deny her a discharge on the basis of a third party's misconduct.[8]

Admittedly, nothing in the text of any of these provisions makes it clear that the exceptions should apply only to debtors who are responsible for the wrongdoing that caused the debt. However, the government's rule would require us to adopt the

---

[8]The dissent rejects this comparison, arguing that "[nominal-defendant] [d]isgorgement of the proceeds of a violation is owed *for* the violation, whereas repayment of a loan is owed *for* the loan, not a fraud committed antecedent to the granting of the loan." Dissenting Op. at 17751 n.8. We have previously recognized that the term "nominal defendant" encompasses both the "paradigmatic" case—a bank or trustee who has a custodial claim to the property—and "persons who are in possession of funds to which they have no rightful claim." *Ross*, 504 F.3d at 1141.

It would be more accurate to say that Sherman owes the debt "for" the advance payment he received from Whitworth and his subsequent failure to earn those funds, rather than stating that Sherman owes the debt for the violation of the securities laws. For example, if a bank-trustee misappropriates trust funds and the owner of a trust seeks to use those funds to pay a loan, it would be more accurate to say that the bank-trustee owes a debt "for" its misappropriation, and that the owners owes a debt "for" the loan, than it would be to say that the bank-trustee owes a debt "for" the loan.

opposite presumption: that exceptions should be applied broadly unless expressly confined to guilty debtors. We do not think the structure of § 523, taken alone, enables us to resolve this question. We must therefore examine § 523(a)(19) in light of the purposes of the Bankruptcy Code.

B

Although § 523(a)(19)'s text and structure do not resolve the dispute before us, we believe that guidance from Supreme Court, as well as our previous opinions, strongly favor the bankruptcy court's interpretation of the statute. At the core of the Bankruptcy Code are the twin goals of ensuring an equitable distribution of the debtor's assets to his creditors and giving the debtor a "fresh start." *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563 (1994). Put simply, the Bankruptcy Code accomplishes this goal by including the bulk of the debtor's property in the bankruptcy estate, *see* 11 U.S.C. § 541(a), distributing that property to creditors in accordance with various provisions of the Code, and finally discharging the debtor's remaining debts unless those debts either fall into an exception or there is reason to deny a discharge altogether, *see id.* § 727(a). Accordingly, the exceptions to discharge enumerated in § 523 necessarily prevent a debtor from receiving a completely fresh start, as the debt remains a burden even after all other debts are legally satisfied.

**[3]** With this in mind, the Supreme Court has adopted a rule of construction interpreting exceptions to discharge narrowly. *See Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) ("[E]xceptions to discharge should be confined to those plainly expressed" (internal quotation marks omitted)); *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1104 (9th Cir. 2005); *see also* 4 COLLIER ON BANKRUPTCY ¶ 523.05 (2010) ("In determining whether a particular debt falls within one of the exceptions of § 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit

that has always pervaded the entire bankruptcy system."). We also recognize that the Bankruptcy Code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.' " *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Taken together, these two basic principles suggest that exceptions to discharge should be limited to dishonest debtors seeking to abuse the bankruptcy system in order to evade the consequences of their misconduct.

**[4]** Likewise, if we adopt the government's interpretation of § 523(a)(19), an innocent[9] recipient of funds obtained by another party's participation in a securities violation can not only be ordered to disgorge, but must also continue paying off that debt even if he becomes insolvent and is forced to file for bankruptcy. Although we do not dispute *Colello*'s conclusion that a court may order recipients of these funds to disgorge any funds that remain in their possession, we do not think Congress wanted to immunize these debts from discharge in bankruptcy, when the debtor has not been found guilty of any wrongdoing.

## C

**[5]** The legislative history of § 523(a)(19) offers modest additional support for our interpretation. We begin by observing that it is unlikely that Congress actually considered the specific question of whether innocent third parties subject to disgorgement orders should be subject to a discharge exception. *See Albernaz v. United States*, 450 U.S. 333, 341 (1981) ("Congress cannot be expected to specifically address each

---

[9]We do not suppose that every debtor who owes a disgorgement-based debt is necessarily an innocent recipient for purposes of the rule we adopt. For instance, in *Colello* itself, we found Colello liable in part because he invoked his Fifth Amendment privilege not to testify and drew the adverse inference that the funds he received were ill-gotten. 139 F.3d at 677. However, in cases like this one, where neither party claims that the debtor is responsible for any securities-related wrongdoing, we believe the debtor must be treated like an "innocent" one for purposes of § 523(a)(19).

issue of statutory construction which may arise."). The § 523(a)(19) exception, enacted as part of the Sarbanes-Oxley Act, responded to concerns that the Bankruptcy Code "permit[ted] wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations." S. Rep. No. 107-146, at 8 (2002). Specifically, Congress sought to address the obstacles posed by the fact that the elements of various securities violations do not perfectly overlap with the elements of fraudulent conduct within the meaning of § 523(a)(2)(A), frequently forcing the SEC to relitigate otherwise resolved cases before a bankruptcy judge because the violator was not collaterally estopped from challenging the claim of fraud. 148 Cong. Rec. S7418, S7419 (2002). In other words, one reason Congress enacted the exception was to target those parties who are guilty of securities violations, in order to ensure that judgments for securities violations are treated, in bankruptcy, like judgments for fraud. This provides further support for our reading; as we note above, we have previously held that a debt falls into the discharge exception for fraud only when *the debtor* engaged in the fraudulent conduct. *See Sabban*, 600 F.3d at 1222.

**[6]** The government offers a contrary reading of the legislative history, citing Senator Leahy's explanation that § 523(a)(19) was intended to "prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible." 148 Cong. Rec. S7418, S7419 (2002). The government interprets this statement to mean that Congress implemented the exception to further the independently important goals of punishment and compensation. We disagree with this interpretation. It is unlikely that Congress sought to divorce the two goals from each other. A better understanding of Senator Leahy's comments is that Congress wanted to compensate defrauded investors by recapturing the ill-gotten gains of those who were responsible for the fraud in the first place. Hence, Senator Leahy, like the Senate Report on Sarbanes-Oxley, referred to "wrongdoers"

who might "discharge *their* obligations under court judgments or settlements based on securities fraud and other securities violations." *Id.* (emphasis added). The emphasis on preventing "wrongdoers" from using the bankruptcy laws can only refer to debtors who are also wrongdoers; neither statement supports denying discharge to debtors who have been drawn into a securities fraud but are not themselves "wrongdoers."

D

The government encourages us to adopt the district court's reasoning, which characterized Sherman "as a constructive trustee of the funds he received," and concluded that a trustee "cannot avoid his obligation to return funds he held in trust for a third party by filing for bankruptcy." At first glance, this reasoning appears to follow naturally from the disgorgement order against Sherman. We think, however, that this argument confuses disgorgement of funds with discharge in bankruptcy. In *Colello*—which was not a bankruptcy case—we described so-called "nominal defendants" as parties who "hold[ ] the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute." 139 F.3d at 676 (internal quotation marks omitted). Since Sherman was in possession of funds that he had received from his clients but had not yet earned, the district court properly relied on a *Colello* theory when issuing its disgorgement order. But requiring Sherman to disgorge whatever he has retained is very different from deciding that he is prevented from discharging those debts in bankruptcy. The theories and the reasons behind disgorgement and discharge are quite distinct.

Even if Sherman nominally held the funds in some kind of fiduciary capacity as the dissent suggests, Dissenting Op. at 17751-52, the applicable exception would be § 523(a)(4), not § 523(a)(19). That section prohibits the discharge of debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." For instance, if the government's position were that Sherman was not entitled to the funds and

had improperly appropriated that money, then it could have sought a determination that Sherman was guilty of embezzlement. *See Littleton v. Transamerica Commercial Fin. Corp. (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) (listing, as the elements of embezzlement, "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud" (internal quotation marks omitted)). If, as the dissent suggests, Sherman was essentially a trustee of Whitworth's money and improperly spent advance funds instead of placing them in a trust, *see* Dissenting Op. at 17750-51, the government could have urged that Sherman be found responsible for "defalcation while acting in a fiduciary capacity." *See Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190-91 (9th Cir. 2001) ("The definition of defalcation includes both the misappropriation of trust funds or money held in any fiduciary capacity; and the failure to properly account for such funds." (internal quotation marks omitted)). Indeed, "[e]ven innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations; no intent to defraud is required." *Id.* Had the government sought to except Sherman's debt from discharge on § 523(a)(4) grounds, it might well have prevailed. Indeed, it would be far more accurate to say that Sherman's debt is "for" his own breach of his fiduciary duties than it is to say that it is owed "for" Whitworth's securities violation. As we noted in *Sherman I*, however, the SEC is time-barred from seeking a determination that § 523(a)(4)'s exception prohibits the discharge of Sherman's debt. 491 F.3d at 975 n.39.

E

The district court also expressed concern that, under the interpretation we adopt today, "persons who would otherwise be liable to make disgorgement of funds derived from a securities law violation would be able to avoid their debts by filing for protection under the bankruptcy laws." In particular, the court sought to avoid the possibility that "one party could vio-

late the securities laws and transfer the proceeds derived from the violation to a third party who could insulate those funds from disgorgement by filing for bankruptcy."

[7] This concern is flawed in at least two respects. First, as Sherman notes, if the third party in question has actually aided or abetted a securities violation, that party may be prosecuted for a violation of securities laws in addition to the primary violator. Although Sherman's retention (and subsequent loss) of unearned fees from a contingency case in which his client's securities violation may appear suspect, the SEC's concession that Sherman had not violated any securities laws undermines its subsequent attempts to leverage this appearance of culpability into any legal consequence.

Second, it is not clear how a third party could "insulate" a securities violator's ill-gotten gains by taking those gains and filing for bankruptcy. If a creditor can show that a debtor has concealed property or funds from the bankruptcy court, a discharge can be denied in its entirety, 11 U.S.C. § 727(a)(2), or revoked after it is granted, 11 U.S.C. § 727(d). Otherwise, any funds possessed by the debtor at the time the discharge has been granted will presumably have been included in the bankruptcy estate and distributed to creditors.[10] *See* 11 U.S.C. § 541. On the other hand, if Sherman is not granted a dis-

---

[10]The dissent argues that our decision enables Sherman to insulate funds from the disgorgement judgment because the money subject to disgorgement is actually Whitworth's money held in trust and therefore never entered the estate. Dissenting Op. at 17750-52. Indeed, the dissent argues that we should treat the money subject to disgorgement as money *actually* held in trust. *See, e.g.*, Dissenting Op. at 17746 ("[Sherman] owes the SEC because he held the proceeds of fraud *in trust*."). While this might be viable if the money were actually part of a trust (and was therefore still available for satisfying the disgorgement judgment), nothing in the record indicates that this was the case here. While Sherman's failure to place these funds in a trust might, as we have noted, constitute a breach of his fiduciary duties, the mere fact that he had a *duty* to place the money in a trust (which he might have failed to fulfill) does not mean that we may act as if the funds were *actually* in a trust.

charge, he will not simply have to hand over funds in his possession — rather, the SEC will be entitled to money that Sherman does not yet have in order to satisfy the debt, preventing Sherman from receiving the "fresh start" promised by bankruptcy.

**[8]** In short, the Bankruptcy Code already includes protections against attempting to conceal assets or defraud creditors, or otherwise failing to disgorge available assets. There is no additional need for us to expand the scope of § 523(a)(19) to cover innocent debtors in order to accomplish this goal.

### III

**[9]** We hold that 11 U.S.C. § 523(a)(19) prevents the discharge of debts for securities-related wrongdoings only in cases where the debtor is responsible for that wrongdoing. Debtors who may have received funds derived from a securities violation remain entitled to a complete discharge of any resulting disgorgement order.

REVERSED.

---

FISHER, Circuit Judge, dissenting:

I respectfully dissent because the majority disregards the plain meaning of "for" in 11 U.S.C. § 523(a)(19) and misconstrues Sherman's role as a so-called "honest but unfortunate" debtor. The majority holds that a debt is only "for the violation of any of the Federal securities laws," § 523(a)(19)(A)(i), *when the debtor committed the violation*. Maj. Op. 17733. The word "for" carries no such limitation. A debt is also "for" a violation of the securities laws when it is an obligation to return the proceeds of the violation being held in trust for the wrongdoer — which describes Sherman's debt. The word "for" has many meanings, but as the majority concedes, one

of them is "because of," "on account of,"[1] "as a result of,"[2] "having (the thing mentioned) as a reason or cause."[3] In context, that is plainly how § 523(a)(19) uses the preposition. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context . . . ."). Causation is not the *only* possible meaning of "for," but it is the most ordinary and natural one and thus the controlling one. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) (internal quotation marks omitted)); *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994) (holding that when a term "is not defined in the statute, we must construe the term 'in accordance with its ordinary or natural meaning.' ") (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)).

The majority acknowledges that my plain reading is plausible, but then attempts to undermine it with various flawed theories. Principally, the majority relies on the proposition that it would be best if "for" had a different meaning, because that would better suit the bankruptcy policy that honest debtors deserve a fresh start. "With a plain, nonabsurd meaning in view, we need not proceed in this way." *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004). Whatever the majority's conception of the competing policy concerns in § 523(a)(19), "[o]ur unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome

---

[1] Webster's Third New International Dictionary 886 (2002) (definition 8a, *e.g.*, "shouted ~ joy," "decorated ~ bravery").

[2] American Heritage Dictionary of the English Language 686 (4th ed. 2000) (definition 7, *e.g.*, "jumped for joy").

[3] Oxford Dictionaries (definition 5, *e.g.*, "[t]hree other men were also jailed for their subordinate roles in the operation"), available at http://english.oxforddictionaries.com (last visited Aug. 5, 2011).

is longstanding." *Id.* Nevertheless, the majority decides to read words into the statute, resulting " 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope.' " *Id.* (alterations in original) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)). In reaching to interpret the statute to reflect the "best" policy, the majority misconstrues the plain text, distorts the statutory structure and actually defeats the proper objectives of bankruptcy policy and the securities laws.

The majority opinion's first flaw is its assertion that "we cannot say that Sherman owes the debt 'in requittal of' fraudulent conduct [because] Sherman's debt results from the fact that he never 'earned' the money he owes, and not because he committed any wrongdoing." Maj. Op. 17734. It does not matter whether Sherman's debt is "in requittal of" a securities law violation because that is not what "for" means in § 523(a)(19); but even granting the majority its definition of "for," there is no dilemma. One certainly can requite a debt for a violation he did not commit if he is a nominal defendant holding money in trust for the violator and has been ordered to turn over the money.[4] As acknowledged by the majority and explained below, a nominal-defendant disgorgement judgment like that owed by Sherman is premised on the nominal defendant's lack of legitimate claim to the money subject to disgorgement.[5] Maj. Op. 17732. Sherman does not owe the SEC simply because he never earned the advance fees from his client; rather, he owes the SEC because he held the proceeds of fraud *in trust*. The money Sherman owes was never

---

[4]Requittal is the "act of return or repayment for something." Webster's Third New International Dictionary 1929 (2002) (definition 1); *see also* American Heritage Dictionary of the English Language 1482 (4th ed. 2000) (definition 2: defining "requittal" as "[r]eturn, as for an injury or friendly act"); Oxford Dictionaries (Apr. 2010) (defining "requite" as to "make appropriate return for (a favor, service, or wrongdoing)"), available at *http://english.oxforddictionaries.com* (last visited Aug. 5, 2011).

[5]Nominal defendants are also known as "relief defendants."

his own and he must disgorge it to the SEC because the owner would have been required to disgorge it had the money not been held in trust by Sherman.

The majority opinion's second flaw is to rely on precedent to suggest that reading "by the debtor" into the statute is advisable, when none of the precedent actually argues for that result, interprets the word "for," or otherwise refutes the logic of recognizing Sherman's debt as one "for" violations of the securities laws. Although we have interpreted the exception from discharge "for money . . . obtained by . . . false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A), to require that the "debtor made [false] representations," *In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010) (quoting *In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir.1996)) (internal quotation marks omitted), there is no indication that our precedent ever considered the possibility of a nominal-defendant disgorgement judgment. Moreover, the "only issue" in *Sabban* — the majority's chief precedent — was whether a particular state court judgment was proximately caused by a false representation. *Id.* at 1223. Even less relevant are the majority's cases on the exception from discharge "for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). In *In re Cantrell*, 329 F.3d 1119 (9th Cir. 2003), there was no eligible fiduciary relationship between any two parties, so we did not consider whether the debtor needed to be the fiduciary. *See id.* at 1127. Having not confronted the problem of nominal-defendant disgorgement, this holding is simply inapposite and should not affect our analysis.

To the extent there is any tension between the plain meaning of § 523(a)(19) and our interpretations of other subsections of § 523, the canon of statutory construction that favors consistent interpretation of parallel language cannot trump § 523(a)(19)'s plain meaning. *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that the legis-

lature says in a statute what it means and means in a statute what it says there.' ") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)) (alteration omitted); *Garcia v. United States*, 469 U.S. 70, 74 (1984) (describing a canon of construction as "only an instrumentality for ascertaining the correct meaning of words") (quoting *Harrison v. PPG Indus., Inc.*, 446 U.S. 577, 588 (1980)) (internal quotation marks omitted). If we look to the *text* of § 523 rather than our glosses on it, we see that Congress knew how to explicitly require conduct "by the debtor," *compare* § 523(a)(19), *with* § 523(a)(6), and the accretion of faulty interpretations cannot obscure that fact. *See Patterson v. Shumate*, 504 U.S. 753, 760 (1992) (imposing "an 'exceptionally heavy' burden of persua[sion]" to overcome clear text in the Bankruptcy Code) (quoting *Union Bank v. Wolas*, 502 U.S. 151, 156 (1991)); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to *the particular statutory language* at issue, as well as *the language* and design of the statute as a whole." (emphasis added)). We should not disregard the plain meaning of § 523(a)(19) because past interpretations of different statutes in cases confronting dissimilar facts may implicitly suggest a different outcome.[6]

The majority opinion's third flaw is to mistake the relationship between securities and bankruptcy policy in § 523(a)(19). The majority's discussion of policy concerns fails to mention that "[d]isgorgement plays a central role in the enforcement of the securities laws." *SEC v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d 1031, 1047 (9th Cir. 2005) (en banc) (quoting *SEC v. Rind*, 991 F.2d 1486, 1491 (9th Cir.

---

[6]Congress also demonstrated its awareness of the modifier "by the debtor" within § 523(a)(19) itself. To be excepted from discharge a debt must not only be for a violation of the securities laws, but must also "result[ ] . . . from" an obligation "owed *by the debtor*." 11 U.S.C. § 523(a)(19)(B) (emphasis added). Congress clarified that the *debt* must be owed by the debtor, but omitted the majority's desired language that the *securities violation* must be committed by the debtor.

1993)) (internal quotation marks omitted). Disgorgement is an equitable remedy for fraud, based on the truism that the violator "has no right to retain the funds illegally taken from the victims." *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006) (quoting *SEC v. Colello*, 139 F.3d 674, 679 (9th Cir. 1998)) (internal quotation marks omitted). The remedy "is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *Id.* (quoting *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (1998)) (internal quotation marks omitted). The SEC's efforts to deter securities violations "would be greatly undermined if securities law violators were not required to disgorge illicit profits." *Gemstar*, 401 F.3d at 1047 (quoting *Rind*, 991 F.2d at 1491) (internal quotation marks omitted). Accordingly, where the ill-gotten gains are held by a third-party "in a subordinate or possessory capacity," *Colello*, 139 F.3d at 676 (quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) (internal quotation marks omitted), "the SEC may name [such] a non-party depository as a nominal defendant to effect full relief in the marshalling of assets that are the fruit of the underlying fraud," *id.* at 677. *See also SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) ("Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.").

Critically, a nominal defendant by definition "has no legitimate claim to the disputed property," *Colello*, 139 F.3d at 676, and is joined " 'purely as a means of facilitating collection,' " *id.* (quoting *Cherif*, 933 F.2d at 414) (internal quotation marks omitted). *See also CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-92 (4th Cir. 2002) (quoting *Colello*); *Cherif*, 933 F.2d at 414 ("A 'nominal defendant' is a person who can be joined to aid the recovery of relief without an assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation."). "The paradigmatic nominal defendant is 'a

trustee, agent, or depositary,' " *Colello*, 139 F.3d at 676 (quoting *Cherif*, 933 F.2d at 414), or "bank . . . [that] has only a custodial claim to the property," *id.* at 677.[7]

A nominal defendant's lack of legitimate claim to the money subject to disgorgement has powerful consequences in bankruptcy. If a "debtor does not own an equitable interest in property . . . [it] is not 'property of the estate,' " *Beiger v. IRS*, 496 U.S. 53, 59 (1990) (quoting 11 U.S.C. § 541(a)(1)), and therefore is not available for creditors. *See* 11 U.S.C. § 726(a) (limiting liquidation to "property of the estate"); *In re Cal. Trade Technical Sch., Inc.*, 923 F.2d 641, 645-46 (9th Cir. 1991) ("Bankruptcy law does not view property held in trust by the debtor as property of the estate available for general creditors."); *In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1994) ("[S]omething held in trust by a debtor for another is [not] property of the bankruptcy estate."). Whit-

---

[7]When I refer to a "nominal defendant" in this dissent, I am referring only to these paradigmatic examples, which all invoke the concept of an express or resulting trust intentionally created by the transferee. *See* Restatement (Third) of Trusts § 2 (2003) (defining "express trust"); *id.* § 7 (defining "resulting trust"). Constructive trustees can also be nominal defendants but we need not consider whether a disgorgement judgment against such a defendant would be dischargeable. *See FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1137, 1141-42 (9th Cir. 2010) (holding that an attorney was properly ordered to disgorge fees received with knowledge the money was derived from securities fraud); *SEC v. Ross*, 504 F.3d 1130, 1142-44 (9th Cir. 2007) (suggesting that a "mere puppet" or "empty vessel into which the true wrongdoers funneled their proceeds" would be a nominal defendant); *CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) ("The receipt of property as a gift, without the payment of consideration, does not create a 'legitimate claim' sufficient to immunize the property from disgorgement.").

Whereas a constructive trust is an equitable remedy to vindicate the fraud victims' superior interest in the property, *see Network Servs.*, 617 F.3d at 1141, Sherman's debt is the direct result of the wrongdoer's interest, as explained more fully below — Sherman held the *violator*'s money in express trust *for the violator*, and thus must disgorge it because the violator would have been ordered to disgorge it to the SEC absent the transfer to Sherman.

worth's money, held by Sherman in trust, is therefore insulated from Sherman's creditors. The majority thus frustrates the SEC's enforcement efforts based on a hollow policy argument; payment of the disgorgement judgment would not in fact harm an honest debtor's "fresh start." An honest debtor has nothing to fear from a disgorgement judgment — the money owed is shielded from creditors; and he has nothing to gain from a discharge — he has no right to do anything with the money other than disgorge it.[8]

Sherman admits he is not an honest debtor — he spent *all* of the advance payments from his client, Whitworth Energy. According to the California Rules of Professional Conduct, Sherman was required to keep the "funds belonging in part to a client and in part presently or potentially to [him]" in a trust account. Cal. Rules of Prof'l Conduct R. 4-100(A)(2). Money held in a client trust account is held in an express trust as the client's fiduciary. *See Banks v. Gill Dist. Ctrs., Inc.*, 263 F.3d 862, 871 (9th Cir. 2001). The attorney cannot claim the advance fees until he earns them. *See Brother v. Kern*, 64 Cal. Rptr. 3d. 239, 249 (Ct. App. 2007) (holding that "so long as funds were in the client trust account, they were still [the client's] funds"). Sherman's debt is to disgorge only the portion of the advance payments from Whitworth that he did not earn

---

[8]Nominal-defendant disgorgement is distinguishable from the majority's hypothetical loan induced by fraud. Maj. Op. 17736-37. The recipient of a loan does not owe a debt *because of* the fraud of a third party in the loan approval process in the same way that a nominal defendant owes a debt to turn over money *belonging to the wrongdoer* because of the wrongdoing. Disgorgement of the proceeds of a violation is owed *for* the violation, whereas repayment of a loan is owed *for* the loan, not a fraud committed antecedent to the granting of the loan. This is hardly the first time the law has presented a slippery question of causation, but there is a common sense distinction here. The majority's counterintuitive conclusion turns on a linguistic difference between § 523(a)(19) and § 523(a)(2), which excepts from discharge debts "for money . . . *obtained by* . . . fraud." (Emphasis added.) The phrase "obtained by" may sweep as broadly as the majority fears, and impair the fresh starts of honest debtors, but the problem does not extend to § 523(a)(19).

and thus did not own. Sherman therefore owes the SEC $581,313.43 of *Whitworth's money*.[9]

An accurate appraisal of the policy concerns implicated by this case only reinforces the plain meaning of § 523(a)(19). It is logical that if Whitworth could not have avoided disgorging the money by filing for bankruptcy — which is undoubtedly true — Sherman similarly cannot avoid disgorging Whitworth's money by filing his own bankruptcy. The majority focuses on Sherman's lack of personal culpability for a securities law violation, and loses sight of the fact that SEC is trying to prevent discharge of a debt to repay money that never belonged to Sherman. We have already held that Sherman's disgorgement judgment serves to "further the SEC's goals of deterring securities laws violations and compensating defrauded investors." *In re Sherman*, 491 F.3d 948, 964-65 (9th Cir. 2007). Further, the majority admits that Congress enacted § 523(a)(19) to deter securities fraud and compensate victims by preventing wrongdoers from using bankruptcy to avoid disgorging their ill-gotten gains, and yet the majority's countertextual interpretation of § 523(a)(19) does just the opposite. If the SEC cannot recover Whitworth's money, some fraction of the profit from Whitworth's securities fraud will remain at large and victims of the fraud will go uncompensated.

In sum, I would adhere to the plain language of § 523(a)(19) and affirm Judge Snyder's sensible decision. A debt is "for" a violation of the securities laws when it is caused by such a violation. Sherman's debt is caused by a

---

[9]Sherman alleges the excess payments were agreed to be an interest free loan, in contravention of his ethical duties, and thus he spent them but should not be held accountable to repay the "loan" after his bankruptcy discharge. Although there may have been such an agreement, and thus Sherman may have had a legitimate claim to the money, Sherman did not contest the disgorgement judgment. The district court identified Sherman's ethical obligations as one basis for his lack of legitimate claim to the money, so I focus on that basis for his nominal defendant status.

securities law violation because he is legally obligated to disgorge the ill-gotten gains of such a violation that he held in trust for the violator.