BRIEN, Circuit Judge.
At the behest of the Oklahoma Department of Securities, Oklahoma courts found early investors in a Ponzi scheme carried out by a third party to have been unjustly enriched and required disgorgement. Judgments were entered against those in *1173 vestors. We must decide whether the judgments entered against Robert Mathews, Marvin Wilcox, and Pamela Wilcox qualify as a nondischargeable debt under 11 U.S.C. § 523(a)(19). The bankruptcy-court decided the debts were nondis-chargeable because they were “for a violation” of securities laws. The district court affirmed. We reverse and remand for further proceedings.[1]
I. BACKGROUND
In 2005 Marsha Schubert pled guilty to crimes related to a Ponzi scheme[2] she used to defraud multiple investors of funds totaling over nine million dollars. Her activities violated the Oklahoma security laws. Robert Mathews and the Wilcoxes were investors in Schubert’s Ponzi scheme. After Schubert’s conviction, the Oklahoma Department of Securities (the Department) sued over 150 of her investors, including Mathews and the Wilcoxes, to recoup funds distributed in the Ponzi scheme on the grounds of unjust enrichment, fraudulent transfer, and equitable lien. The Department later requested summary judgment only on the basis of unjust enrichment. The Oklahoma trial court granted summary judgment requiring Mathews and the Wilcoxes to repay profits of approximately half a million dollars each. The Wilcoxes, but not Mathews, unsuccessfully appealed to the Oklahoma Court of Civil Appeals and subsequently to the Oklahoma Supreme Court, which reversed and remanded for further proceedings.[3] See Okla. Dep’t. Sec. v. Blair et al., 231 P.3d 645, 670 (Okla.2010).
Mathews and the Wilcoxes (collectively the Debtors) filed for bankruptcy protection and the Department initiated adverse proceedings to avoid discharge of the judgment debt. The bankruptcy court consolidated the cases and granted summary judgment to the Department, concluding the debts were not dischargeable because they fell under the exception in 11 U.S.C. § 523(a)(19) as judgments for the violation of securities laws. The district court affirmed. The Debtors appeal from the district court’s judgment.[4]
II. DISCUSSION
We. review the bankruptcy court’s interpretation of a statute de novo. In re Troff, 488 F.3d 1237, 1239 (10th Cir.2007).
*1174 has certainly acknowledged that a central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. But in the same breath that ... [it] ha[s] invoked this fresh start policy, ... [it] ha[s] been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor.
Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citation and quotation omitted). “Exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor’s favor.” In re Sandoval, 541 F.3d 997, 1001 (10th Cir.2008) (quotation omitted).
Under 11 U.S.C. § 523:
(a) A [bankruptcy] discharge ... does not discharge an individual debtor from any debt—
(19) that—
(A) is for—
(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws....
The burden is on the creditor to show a debt is nondischargeable under § 523(a). Grogan, 498 U.S. at 283, 111 S.Ct. 654. “Section 523(a)(19) discharge exceptions are often defined by law external to the Bankruptcy Code.” In re Lickt-man, 388 B.R. 396, 409 (Bankr.M.D.Fla. 2008).
 There is a valid state court judgment against the Debtors, entered to require them to repay profits distributed to them as a result of Schubert’s Ponzi scheme. The only dispute is whether such a judgment qualifies as one “for a violation” of securities laws under § 523(a)(l9). The Department argues the state court judgment is “for the violation” of securities laws because the disgorgement was a direct result of Schubert’s violation of securities laws and because the Debtors materially aided in the violation.[5] The Debtors contend the judgment is not a debt incurred “for the violation” of securities laws because they have never been charged with such violations.
[W]e begin with the understanding that Congress says in a statute what it means and means in a statute what it says.... [W]hen the statute’s language is plain, the sole function of the courts— *1175 at least where the disposition required by the text is not absurd — is to enforce it according to its terms.
Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quotations and citations omitted). These debts do not fall under the 523(a)(19) exception according to the plain language of the statute. The judgments at issue are not “for a violation” of securities laws but for unjust enrichment resulting from someone else’s violation of those statutes.[6] Although the Department argues such unjust enrichment is a violation of the securities laws, the Oklahoma Supreme Court clearly stated “[t]he defendants were not charged with securities violations.” Blair, 231 P.3d at 650.
During oral argument, the Department attempted to analogize this case to McKowen v. IRS, in which we concluded nondischargeable debt “for a tax” included a transferee’s liability to pay taxes assessed to his defunct business. 370 F.3d 1023 (10th Cir.2004). We determined the transferee tax liability was still primarily for a tax notwithstanding the fact that responsibility for it had been transferred.[7] Id. In contrast, the debtors’ liability in the instant case was never for a violation of securities laws but only for unjust enrichment. It is not a single type of liability that was transferred from one party to another, as in McKowen, but a completely different type of liability.
Examining the history behind the statute does not lead us to a different conclusion. 11 U.S.C. § 523(a)(19) was enacted as part of the Sarbanes-Oxley Act in 2002. The Senate Report on the draft legislation indicates it was enacted to address perceived loopholes in securities laws after the Enron debacle.[8] The early language of § 523(a)(19)(A) excepted from discharge a judgment that “arises under a claim relating to” securities violations. S.Rep. No. 107-146 at 27. The language was subsequently changed to except a judgment that “is for” securities violations. 11 U.S.C. § 523(a)(19)(A).
The Department relies heavily on the Senate Report as indication that the law was intended to “help defrauded investors recoup their losses....” S.Rep. No. 107-146 at 8. Assuming the report could be a useful tool of statutory construction, it is of little help to the Department as it consistently refers to “hold[ing] accountable those who incur debts by violating our securities laws” and explains “the bill protects victims’ rights to recover from those who have cheated them.” Id. at 8, 11 (emphasis added). It is evident from the text of § 523(a)(19)(A) that Congress intended to penalize the perpetrators of such schemes by denying them relief from their *1176 debts. Adopting the Department’s interpretation would impose the heavy penalty of nondischargeability on violators and nonviolators alike. That Congress intended such an extreme result is evident neither in the text of the statute[9] nor in the historical record.
The Department cites an unpublished order in Crawford, v. Myers, No. 09-1211 (Bankr.D.Colo., July 20, 2009, Order on Motion to Dismiss Complaint)[10] and SEC v. Sherman, 406 B.R. 883 (C.D.Cal.2009). The judge in the Myers case concluded the statute was intended to reach innocent investors. As we have explained, we do not believe the statute supports such a reading. Similarly, the debtor in Sherman “had obtained funds derived from a [third party’s] violation of federal securities laws to which he had no legitimate claim of ownership.” Id. at 885. The bankruptcy judge determined the debt was dischargea-ble but the district court reasoned the SEC was merely reaching through the debtor to collect assets in which the debtor had no equitable interest and cited the bankruptcy decision in this case, concluding the repayment order was a nondis-chargeable debt in part because to permit discharge would “frustrate the ability of the SEC to enforce federal securities laws.” Id. at 887.
Following the briefing and oral argument in the case before us, however, the Ninth Circuit reversed the district court’s decision in Sherman. Sherman v. SEC, 658 F.3d 1009,1010 (9th Cir.2011). Recognizing the merits of the same arguments made by the dissent here, the court nonetheless concluded the narrow construction applied to discharge exclusions and the purpose of bankruptcy to provide a fresh start to honest but unfortunate debtors precluded a reading of the statute to include debtors who are not charged with securities violations. Id. at 1015-16. Similar to the situation here, Sherman was not necessarily an “innocent” in acquiring the funds he was ordered to disgorge, but he had not been accused of a securities violation. As the court noted:
[If the third party in question has actually aided or abetted a securities violation, that party may be prosecuted for a violation of securities laws in addition to the primary violator.... If a creditor can show that a debtor has concealed property or funds from the bankruptcy court, a discharge can be denied in its entirety, 11 U.S.C. § 727(a)(2), or revoked after it is granted, 11 U.S.C. § 727(d).... In short, the Bankruptcy Code already includes protections against attempting to conceal assets or defraud creditors, or otherwise failing to disgorge available assets. There is no additional need for us to expand the scope of § 523(a)(19) to cover innocent debtors in order to accomplish this goal.
Id. at 1018.
Although the Department claims these debtors are not innocent parties, it declined to prosecute them for securities laws violations. Had it done so successfully, any judgment it obtained would no doubt be considered nondischargeable under § 523(a)(19). Instead, it argues these debts are immune from discharge merely because someone violated the securities *1177 laws and they coincidently profited. Permitting debtors, who were not personally found to be in violation of securities laws, to obtain relief from a judgment intended only to redistribute funds among multiple victims of a Ponzi scheme is in accordance with the plain language of the statute. It in no way frustrates the ability of the various securities regulators to carry out their responsibilities or to bring proceedings against violators.
The Department’s position conveniently serves its ends and perhaps (in the abstract) a public good. But the language of the statute cannot reasonably be stretched that far.
REVERSED AND REMANDED to the Bankruptcy Court for further proceedings.

. Our jurisdiction derives from 28 U.S.C. § 1291.

. A Ponzi scheme is:
[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usu. without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston.
Black's Law Dictionary 1198 (8th ed.2004).

. The Oklahoma district court ordered the return of all profits, without exception. The The Supreme Court
Oklahoma Supreme Court, however, determined repayment of profits paid to innocent investors was appropriate only if the early investors had received an unreasonable rate of return and remanded so the state trial court could apply the new standard. See Okla. Dept. of Sec. v. Blair, 231 P.3d 645, 669 (Okla.2010). On remand, the trial court entered an order declining to apply the standard to the Wilcoxes because it concluded, while not accused directly of securities violations, they were not innocent investors. The Oklahoma Supreme court affirmed this decision. See Okla. Dep’t. of Sec. v. Wilcox, 267 P.3d 106, 111 (Okla.2011).

.Our review calls for us to look past the district court’s opinion to that of the bankruptcy court. See In re Paul, 534 F.3d 1303, 1310 (10th Cir.2008).

. Although the Department argued the debts were nondischargeable under 523(a)(2)(A) in the bankruptcy proceeding it has limited itself on appeal to arguing under 523(a)(19). The Debtors claim the bankruptcy and district courts ignored disputed issues of fact regarding their level of culpability; the Department makes much of their purported complicity with Schubert’s scheme. However, the level of culpability of the debtors has no bearing on our interpretation of 523(a)(19), which only requires us to determine if the judgments at issue are for a violation of securities laws. The Department chose not to prosecute Mathews or the Wilcoxes for securities violations. See Blair, 231 P.3d at 652 ("In the trial court the Department explained that it made no allegation that the defendants violated the securities statutes or materially aided in the violation of those statutes.”). Our task is not to determine whether they committed such violations but whether the judgment against them is "for” securities violations. We therefore focus not on the underlying facts but on the nature of the judgments at issue. The Wilcoxes’ appeal (or Mathews’ lack thereof) in Oklahoma does not affect our decision because the Oklahoma Supreme Court focused on whether the parties had been unjustly enriched, a completely different question.

. The Oklahoma Supreme Court rejected an explicit grant of power in the securities statutes as a basis for jurisdiction in the underlying action basing the Department’s right to recovery entirely in equity. Blair, 231 P.3d at 652, 661.

. Additionally, in McKowen we were faced with the need to interpret the bankruptcy provisions in a manner that did not run afoul of seemingly conflicting provisions of the tax code, which dictated transferred tax liability be collectible "in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred.” Id. at 1027 (quotation omitted). Here, our interpretation of the exception to discharge, which must be construed narrowly, is constrained by no such conflict.

.Current bankruptcy law permits wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to hold accountable those who incur debts by violating our securities laws.
S. Rep. No. 107-146 at 8.

. The Department points out the statute uses language limiting exceptions to actions "by the debtor” in other sections and that no such limitation is imposed here. This is a valid point but doesn’t answer the basic question of whether the underlying judgment was “for a violation” of securities laws. The judgments at issue here were not part of the proceedings instituted against Schubert but were an entirely separate action. The funds were to be disgorged because they were unfairly distributed to the recipients, not because the recipients violated securities laws.

. Myers was eventually dismissed on stipulation after settlement.