**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. NC-14-1423-DKiTa |
| | ) |
| MOON JOO LEE and JIYOUNG JEONG, | ) Bk. No. 09-48849 |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| BRIAN H. SONG; CHANGBEOM IM, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| MOON JOO LEE; JIYOUNG JEONG, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on May 14, 2015
at San Francisco, California

Filed - June 29, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable William J. Lafferty, Bankruptcy Judge, Presiding

Appearances:     Brian Huibum Song argued for Appellants Brian H. Song and Changbeom Im; David S. Henshaw on the brief for Appellees Moon Joo Lee and Jiyoung Jeong.

Before:  DUNN, KIRSCHER, and TAYLOR, Bankruptcy Judges.

_____

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

This appeal highlights the perils awaiting creditors and attorneys who ignore the bankruptcy discharge based on a mistaken and subjective belief that it does not apply to claims against the debtor. Here, a creditor who had actual knowledge of a debtor's bankruptcy did nothing to assert his fraud claims against the debtor until two years after the discharge injunction provided by § 524[2] arose. The creditor and his counsel apparently had convinced themselves that the debtor's actions were so "nefarious" that the bankruptcy discharge could not apply to bar the creditor's claims. The bankruptcy court saw it differently. It found the creditor and his attorney in contempt for violating the discharge injunction and imposed substantial sanctions against both. We AFFIRM.

## I. FACTUAL BACKGROUND

The Relationship between Appellant Im and Appellee Lee

Appellant Changbeom Im and his wife, Yeunwha Seo, met Appellee Moon Joo Lee early in 2008. At that time, both Appellant Im and Ms. Seo, Korean nationals whose visas were about to expire, were looking for a lawful way to remain in the United States. Appellee Lee, as President of Mad Fish Pier39, Inc. ("MP39"), was engaged in the development in Northern California of "Little Madfish" fast food restaurants, which serve sushi and other Asian foods. Although neither Appellant Im nor Ms. Seo had either business experience

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

generally or experience in restaurant management, they spoke with Appellee Lee about the possibility of acquiring E-2 "Treaty Investor" visas by investing a sufficient sum of money in, and taking over at least 50% management of, one of the proposed restaurants.

In March 2008, Ms. Seo provided Appellee Lee $200,000 as an investment in MP39. The business agreement executed in conjunction with this payment recited that Appellant Im and Ms. Seo wanted to set up a corporation, ISIF, to do business as a Little Madfish restaurant on Christie Street in Fremont, California ("Christie Street Restaurant"). On March 15, 2008, ISIF issued a stock certificate granting Ms. Seo 500,000 shares, representing one-half of ISIF's total stock.

Appellee Lee thereafter referred Appellant Im and Ms. Seo to an immigration attorney, who applied for an E-2 visa for Ms. Seo; the visa application listed Appellant Im as a "derivative spouse."

The Christie Street Restaurant opened in September 2008. Appellant Im was its manager. In October 2008, Ms. Seo had a friend, Go Wook, invest another $250,000 in ISIF on her behalf, after which Ms. Seo owned 70% of ISIF.

Appellant Im operated the Christie Street Restaurant from October 2008 through April 2009. Sales were not good, and the Christie Street Restaurant was not profitable. Appellant Im and Appellee Lee each believed the other was responsible for the lack of success.

In an apparent effort to resolve the disputes between them,

3

Appellee Lee took over management of the Christie Street Restaurant and worked with Appellant Im to find a new location that might prove more successful. Appellant Im rejected an opportunity to move the investment in ISIF to a planned Madfish restaurant on Paseo Padre Parkway in Fremont. Appellant Im eventually agreed to become a 50% co-investor in Redwood City MF, Inc. ("RCMF"), which was developing a Madfish restaurant ("Redwood City Restaurant") in Redwood City, California. No payment was made by Appellant Im in exchange for the 50% ownership interest in RCMF. An individual unconnected to the dispute before us, Emil Howes, owned the other 50% interest in RCMF. Appellee Lee was to participate with Appellant Im and Mr. Howes in preparing the Redwood City Restaurant for opening.

Issues again developed between Appellant Im and Appellee Lee, apparently stemming from Appellant Im's alcohol-related problems, which caused Appellant Im substantial absences from work. Appellee Lee and Mr. Howes prepared the Redwood City Restaurant for opening with little assistance from Appellant Im. In an effort to solve the problem of Appellant Im's absenteeism and allay Mr. Howes' growing concern about his business partner, Appellant Im, at the insistence of Appellee Lee, signed an agreement that if he did not make contact with Appellee Lee every 24 hours[3] he would give up his stock in RCMF.

On November 11, 2009, Appellant Im executed a Stock Transfer

---

[3] Appellant Im apparently "disappeared" for approximately one month, prompting this check-in requirement.

4

Agreement pursuant to which he transferred his 500,000 shares in RCMF to Hyeong Geon Lee ("HG Lee"), a business associate and friend of Appellee Lee. After he was divested of his ownership interest in the Redwood City Restaurant, Appellant Im worked at Mad Fish restaurants Appellee Lee operated in Vacaville and Fremont, California until September 2011.

Appellee Lee's Bankruptcy Case

Appellee Lee and his wife, Jiyoung Jeong, filed a chapter 11 petition on September 22, 2009 ("Bankruptcy Case"). The Bankruptcy Case was converted to chapter 7 on November 30, 2009, on the debtors' motion. The Appellees received their chapter 7 discharge on July 16, 2010.

On August 12, 2010, Appellant Brian H. Song, representing Ho Kon Yoo, a creditor of the Appellees, filed an adversary proceeding ("Yoo Adversary Proceeding") in the Bankruptcy Case, seeking to revoke the Appellees' discharge. Thus, not later than August 12, 2010, Appellant Song had actual knowledge of the existence of the discharge.

After Mr. Yoo failed to make the initial disclosures required by Civil Rule 26 as ordered by the bankruptcy court, Appellees moved for terminating sanctions. Shortly thereafter, Appellant Song signed the stipulation pursuant to which the Yoo Adversary Proceeding was dismissed on June 8, 2012.

State Court Litigation Against Appellee Lee

Meanwhile, on March 8, 2012, three months before signing the stipulation for the dismissal of the Yoo Adversary Proceeding, and

notwithstanding that he had actual notice of the discharge, Appellant Song commenced litigation ("Im Litigation") against Appellees and others on behalf of another client, Appellant Im, in the Alameda County, California Superior Court ("State Court").

The operative complaint ("Complaint") in the Im Litigation stated nine separate claims for relief as follow:

- Fraud (Suppression and Concealment of Material Facts) against **Appellee Lee**, his mother, S.B. Park, and two corporate entities of which Appellee Lee was the President: MP39 and ISIF.

- Rescission of Stock Purchased (Under Cal. Corp. Code § 25501) against ISIF.

- Joint and Several Liability With Persons Liable Under § 25501 (Under Cal. Corp. Code § 25504) against **Appellee Lee** and Ms. Park.

- Breach of Contract against ISIF, **Appellee Lee**, and Ms. Park.

- Fraud (Promise Without Intent to Perform) against Ms. Park and **Appellee Lee.**

- Violation of Franchise Investment Law (Failure to Register or Secure Exemption) against MP39.

- Violation of Franchise Investment Law (Joint and Several Liability) against **Appellee Lee** and Ms. Park.

- State Statutory Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.) against **Appellee Lee** and Ms. Park.

- Unjust Enrichment against **Appellee Lee**, **Appellee Jeong**, Ms. Park, Hae Suk Lee (Appellee Lee's father), and Hyeong Geon Lee (Appellee Lee's friend and business partner).

In his deposition on January 9, 2013, Appellant Im testified regarding his knowledge of Appellee Lee's bankruptcy filing:

Q: Did you know that he filed bankruptcy?

A: I found out in January 2011 while I was researching

6

him online. I found the document. Then I realized he once told me about that. He didn't tell me when or why he filed it.

Q: When did he tell you?

A: I don't remember exactly. I didn't take it seriously because I didn't believe it. He lived in a luxurious house. He owns three Mad Fish restaurants. Who would believe that? I didn't believe that. I regarded it as one way to hide his money.

Q: Before January 2011, you knew that he had filed for bankruptcy; is that correct?

A: I didn't believe it.

Q: Did he tell you that?

A: Yeah. He told me he used to file Chapter 11. He didn't tell me why or when. That was it. He didn't tell me any details. I found out later.

Tr. of Jan. 9, 2013 Deposition of Changbeom Im at 93:18-94:10.

On February 28, 2013, Mr. Henshaw, as Appellee Lee's counsel, sent an email communication to Appellant Song, the subject line of which was "Dismissal Demand." In the email, Mr. Henshaw pointed out that both Appellant Im and Appellant Song had notice of the discharge at the time the Im Litigation was filed. Because it was now clear that Appellant Im knew of the Bankruptcy Case while it was still in chapter 11, Mr. Henshaw stated that Appellant Im had a duty to bring any fraud claim against the Appellees in the bankruptcy court prior to entry of the discharge. Mr. Henshaw demanded that Appellant Song dismiss Appellees from the Im Litigation not later than March 6, 2013. Mr. Henshaw warned that, in the absence of dismissal as demanded, he would file an adversary proceeding in the bankruptcy court for violation of the injunction contained in the

7

discharge. Appellant Song responded in what the bankruptcy court characterized as a bullheaded manner that effectively translated to "[s]ee you in court." Tr. of August 6, 2014 Hr'g at 20:9-20.

Also on or about February 28, 2013, Mr. Henshaw filed various motions in limine in the State Court, including one that asserted the discharge. It is noteworthy that Appellants made three arguments in opposition to the motions in limine. First, the debts were not discharged as a result of the application of § 523(a)(19). Second, Appellant Im's claim arose in mid-2011 and therefore constituted a post-discharge claim. Finally, Appellant Im was not scheduled as a creditor in the Bankruptcy Case so § 523(a)(3) preserves Appellant Im's right to pursue the Im Litigation.

On March 21, 2013, the State Court disposed of six of the claims for relief on the various motions in limine Appellees and their co-defendants had filed, and dismissed a seventh as to Appellee Lee only.[4] Significant to the issues in this appeal, the State Court dismissed the two claims for relief based on alleged violations of California securities laws. The State Court then bifurcated the trial of the remaining claims for relief.

[4] The breach of contract claim against Appellee Lee was dismissed on the basis that it had been discharged in the bankruptcy case.

Appellant Song immediately filed a writ of mandamus to the California Court of Appeal, First Appellate District, requesting that the appellate court direct the State Court to vacate its order granting the motions in limine. The appellate court denied the writ of mandamus on March 22, 2013.

8

The breach of contract claim against only ISIF and Ms. Park and the fraud (promise without intent to perform) claim against Ms. Park and Appellee Lee were tried to a jury between March 21 and March 27, 2013. As to the fraud claim relating to Appellee Lee, the jury found that Appellee Lee had not committed fraud.

The State Court conducted a bench trial of the statutory unfair competition claim against Ms. Park and Appellee Lee on April 2 and 3, 2013, after which the State Court ruled that the statutory unfair competition claim against Appellee Lee was barred by the discharge. The State Court entered its findings on May 22, 2013. Appellants confirmed at oral argument that the State Court judgment as to Appellee Lee is final as to all claims.

On May 24, 2013, Appellant Song notified the State Court and Mr. Henshaw of his intent to file a notice of appeal once the judgment was entered. Mr. Henshaw responded by informing Appellant Song that he would be seeking attorneys' fees in the Im Litigation and sanctions in the bankruptcy case for violation of the discharge injunction.

Appellees Seek Sanctions Against Appellants in the Bankruptcy Court

On May 29, 2013, Appellees filed in the bankruptcy court a motion to reopen their bankruptcy case for the purpose of seeking sanctions against Appellant Im and Appellant Song for violating the discharge injunction by commencing and continuing the Im Litigation.

The Appellants opposed the motion to reopen on the bases that (1) the Appellees had waived their right to assert the discharge because they failed to plead it as an affirmative defense in the Im

9

Litigation, (2) § 523(a)(19) applied such that Appellant Im's claim was not barred by the discharge, and (3) Appellees were not entitled to the benefits of the discharge because they had unclean hands. In the memorandum filed in support of their opposition to the motion to reopen, the Appellants admitted that only two of the State Court claims for relief were for alleged violations of California securities law: the claim for rescission of stock purchase asserted against ISIF pursuant to Cal. Corp. Code § 25501, and the derivative joint and several liability claim asserted against Appellee Lee and Ms. Park pursuant to Cal. Corp. Code § 25504. They further conceded that the securities claims were determined by the State Court's ruling on a motion in limine Appellees had filed in March 2013, immediately before the commencement of trial. The other bases upon which they relied to support pursuing the Im Litigation in the face of the discharge injunction were (1) the Im Litigation was mostly against other defendants,[5] (2) Appellees waived the benefit of the discharge as to the Im Litigation when they failed to assert it as an affirmative defense, and (3) Appellant Im's subjective belief that the discharge itself was not valid.

The bankruptcy court reopened the bankruptcy case by its order entered July 22, 2013. The Appellees promptly filed their motion

---

[5] Appellees assert that although there were a total of seven defendants in the Im Litigation, it was primarily directed against Appellee Lee. In fact, Appellant Song took the deposition of only two of the defendants: Appellee Lee over a period of four days; and HG Lee over two days, with questions primarily directed to HG Lee's interactions with Appellee Lee.

10

for contempt seeking sanctions ("Sanctions Motion").

The Appellants opposed the Sanctions Motion on several grounds; all lack merit. First, Appellant Im asserted he successfully could move the bankruptcy court for an order retroactively annulling the § 362 automatic stay, which, when granted, would render the Sanctions Motion moot. Second, asserting that because (a) a bankruptcy discharge is available only to the honest but unfortunate debtor, (b) Appellee Lee is neither honest nor unfortunate where his bankruptcy case was filed fraudulently, and (c) § 105(a) precludes the bankruptcy court from granting relief that is inconsistent with the Bankruptcy Code, i.e. to any but an honest debtor, the Appellants argued that the bankruptcy court could not utilize § 105(a) to impose sanctions on the Appellants.

At a hearing held September 25, 2013, the bankruptcy court ruled that the discharge injunction had been violated with respect to all claims for relief asserted in the Im Litigation except any which related to § 523(a)(19). The bankruptcy court therefore granted the motion, subject to a "prove up" hearing as to the amount of attorneys fees incurred by Appellees. The bankruptcy court directed the parties to meet and confer regarding the amount of these fees and established a timetable for future pleadings if they could not resolve the dispute regarding the amount of the fees.

When no agreement was reached, on November 12, 2013, Appellees filed "Debtors' Statement of Fees and Costs in Support of Contempt Motion" ("Fee Statement") seeking $102,145.00 in fees and $3,198.23 costs jointly and severally from Appellant Im and Appellant Song for

11

their willful violation of the discharge injunction. The Fee Statement broke fees down based on categories of work performed as follows:

| | | |
|---|---|---|
| A | - Attending trial in Im Litigation | $24,427.50 |
| B | - Preparing for trial in Im Litigation | $23,370.00 |
| C | - Conducting discovery in Im Litigation | $20,735.00 |
| D | - Law and motion work in Im Litigation | $24,002.50 |
| E | - Preliminary matters in Im Litigation | $ 3,955.00 |
| F | - Post-trial work (opposing motion to vacate Judgment filed by Appellants) | $ 570.00 |
| G | - Work in the Bankruptcy Case re sanctions | $ 5,085.00 |
| Costs: | | $ 3,198.23 |

The Appellants opposed the Fee Statement on the basis that there were no "offending" causes of action in the Im Litigation, again arguing that all of the "counts" were related to a securities transaction and therefore authorized by § 523(a)(19). They further asserted that in any event, no damages had been incurred by Appellants as a result of the Im Litigation where (1) Mr. Henshaw represented all seven defendants, not just Appellants; (2) Appellants had never produced a bill from Mr. Henshaw nor provided any evidence they had paid him; and (3) schedules in the subsequent bankruptcy filed on behalf of ISIF did not reflect a debt owed to Mr. Henshaw as of the petition date. Finally, the Appellants argued that damages should be reduced from those in the Fee Statement. Interestingly, Appellants asserted that while "[i]t might . . . have felt that [Appellant Song] was going after [Appellee Lee] only," the Im Litigation was not directed at Appellee Lee, because "there was little or no incentive to go after [Appellee Lee] because he was recently bankrupt;" Appellee Lee only was pursued as an agent of other defendants. Appellant Song complained

12

that Mr. Henshaw waited until February 28, 2013, to assert that the discharge injunction barred the Im Litigation. Appellants asserted that the State Court did not dismiss the fraud claim against Appellee Lee; and the matters at trial did not exceed the scope of the order granting the motion in limine. Finally, and most significantly for purposes of this appeal, Appellant Song averred that he had calculated the fees that appeared to relate to other defendants in the Im Litigation, and that the identified amount was $11,080. Appellants requested the opportunity for discovery with respect to the Fee Statement.

At the initial hearing to determine the sanctions amount, the bankruptcy court ordered the parties to try to reach a settlement with the assistance of the bankruptcy court's alternative dispute resolution program. The record reflects that this settlement attempt failed.

Ultimately, at what was noticed as a status conference, the bankruptcy court, after giving the parties yet another opportunity to settle, made findings with respect to the Sanctions Motion. The bankruptcy court determined that Appellant Im knew of the Bankruptcy Case in time to file an adversary complaint with regard to his fraud claim against Appellee Lee, and that Appellant Song knew of the existence of the discharge. Notwithstanding that they were charged with knowledge of the discharge injunction, they still filed the Im Litigation.

    THE COURT: -- look, your client knows a week after the
    case is filed that there's a case. You as an officer of
    the Court are here [in the Yoo Adversary] telling me to

13

revoke a discharge, and [years] later, your client hauls off and sues somebody in State Court. You simply cannot convince me on those facts that you, number one, and your client, number two, [did not know] exactly what the discharge injunction was about.

MR. SONG: No, Your Honor, I knew that there was an injunction –

THE COURT: Don't bother to argue with me about it.

MR. SONG: Your Honor –

THE COURT: Mr. Song, don't bother. It's not going to – I'm hearing you say the same thing over and over again. I'm not agreeing with you. On these facts – I mean this is a reprehensible record. This is not a close call. This is a God-awful record Mr. Song.

MR. SONG: Your Honor, let me –

THE COURT: And I've tried very hard to indulge you and to take you seriously, and I'm coming to the very reluctant conclusion that this is about nothing more than a cash management exercise, that you simply don't want to pay the money that this guy should be paid because he went through all kinds of difficulty he never should have gone through.

Tr. of August 6, 2014 Hr'g at 28:25-29:23.

Although the Fee Statement sought damages of $102,145.00,[6] which Mr. Henshaw asserted were incurred in his representation of Appellee Lee in the Im Litigation, the bankruptcy court reduced the fees substantially. First, it limited the recovery to fees from the date of the Dismissal Demand email, February 28, 2013, on the basis

---

[6] In advance of this hearing, Appellees' counsel filed a supplemental declaration to evidence that an additional $4,290 in attorney fees had been incurred between December 3, 2013 and July 29, 2014 in the efforts to prosecute and/or settle the issue of the sanctions amount. Thus, although the amount at issue was $106,435, the bankruptcy court appears to have utilized only the $102,145 amount in its analysis.

14

that it was giving both Appellants the benefit of the doubt with respect to when they knew that the discharge was an issue in conjunction with the Im Litigation. The bankruptcy court calculated that $55,665 of the fees were incurred after February 28, 2013, including fees incurred in the bankruptcy court to pursue the contempt matter. Tr. of August 6, 2014 Hr'g at 31:6-11. The bankruptcy court then applied a formula to account for claims asserted against Appellee Lee when compared to all other defendants and awarded Appellee Lee 90% of the post-February 28 fees as sanctions for Appellants' contempt in violating the discharge injunction.

> THE COURT: I'm simply going to, on a meat cleaver basis, take 90 percent of the – actually it probably should have been 89 percent, now that I think of it, but there's been a little bit of trouble getting here, and I think that's worth something too. I'm going to multiply the $55,665 that was incurred after February 28th by – and I did this math myself, okay, -- by .9 and that gets me to $50,098.50, and I think that is unquestionably the time after which Mr. Im knew about the discharge injunction and was on notice for all purposes about that, and I'm going to take at face value the notion that (a)(19) was part and parcel of the claims going forward, and it would have been pursued, and even though Mr. Henshaw is telling me he made some reduction, I'm going to make a further one because I just think it makes some sense in overall fairness to do that.

Tr. of August 6, 2014 Hr'g at 51:15-52:5.

The bankruptcy court entered its order in the amount of $50,098.50 and a judgment in the amount of $50,000.00 awarding sanctions, jointly and severally, against Appellant Im and Appellant Song, with instructions that the award be paid to Appellee Lee in twelve monthly installments beginning in September 2014. Appellants

15

filed a timely Notice of Appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred when it determined that Appellants willfully had violated the discharge injunction.

Whether the bankruptcy court abused its discretion in calculating the sanctions award based on its finding of contempt.

## IV. STANDARDS OF REVIEW

We review the bankrupt court's award of sanctions, made under § 105(a), for an alleged violation of the § 524(a) discharge injunction, for an abuse of discretion. Nash v. Clark Co. Dist. Att'ys Off. (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). Only if the bankruptcy court did not apply the correct legal standard or improperly applied it, or if its fact findings were illogical, implausible, or without support in inferences that can be drawn from facts in the record, is it proper to conclude that the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

16

We may affirm the decision of the bankruptcy court on any basis supported by the record. See ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014); Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

The contempt remedy is available with respect to violations of the discharge injunction pursuant to § 105(a) of the Bankruptcy Code. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191-92 (9th Cir. 2003); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506-07 (9th Cir. 2002). To be subject to sanctions for violating the discharge injunction, the alleged contemnor's violation of the discharge injunction must be "willful." Under Ninth Circuit law, a violation of the discharge injunction is willful when the alleged contemnor (1) knew that the discharge injunction applied, and (2) intended the actions that violated the discharge injunction. See Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006); Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (9th Cir. 1996).

The burden of proof on the issue of willfulness is clear and convincing evidence. See In re Zilog, Inc., 450 F.3d at 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.").

Resolution of this appeal requires that we examine the interface between and among three provisions of the Bankruptcy Code

that impact a debtor's discharge: §§ 523(a)(3), 523(a)(19), and 524(a)(2).

As relevant to this appeal, § 523(a) provides:

(a)  A discharge under section [727] of this title does not discharge an individual debtor from any debt –

. . .

(3) neither listed nor scheduled under 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit –

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such filing.

. . .

(19) that –

(A) is for –

(I) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on or after the date on which the petition was filed, from –

(I) any judgment, order, consent order, or decree entered in a Federal or State judicial

18

or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

Section 524(a)(2) provides:

(a)  A discharge in a case under this title –

. . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under section 727] as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

A.  The Appellants Knew That the Discharge Injunction Applied.

The record is clear that both Appellants knew that the discharge injunction existed before they commenced the Im Litigation.  Appellant Song filed and pursued an adversary proceeding on behalf of another client for the express purpose of revoking the discharge.  Appellant Im knew of the bankruptcy case shortly after its initial filing.

1.  General Application of the Discharge Injunction.

Appellants assert that the first part of the Zilog test required a finding that they knew that the discharge injunction "applied" to the Im Litigation.

Appellants contend first that the discharge injunction did not apply to the Im Litigation because Appellant Im's alleged claim arose on November 11, 2009, the date on which Appellant Im

19

transferred his stock in RMF to HG Lee. As a consequence, Appellants contend the Im Litigation is for a post-petition claim that could not have been discharged in Appellee's bankruptcy case. We disagree. Section 348(d) provides: "A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 . . . of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."

As their primary issue on appeal, the Appellants contend that the bankruptcy court erred when it held them in contempt in the face of what they characterize as their "good faith belief" that the discharge injunction did not apply to the Im Litigation. They assert the bankruptcy court should have taken into account their "subjective" belief regarding the applicability of the discharge injunction to the Im Litigation.

However, case law governing the imposition of sanctions under Rule 11 instructs that a good faith belief is viewed from an objective standpoint. See Smyth v. City of Oakland (In re Brooks-Hamilton), 329 B.R. 270, 283 (9th Cir. BAP 2005), aff'd in part, rev'd in part, and remanded, 271 F. Appx. 654 (9th Cir. 2008) (per curiam)(attorney compliance with Rule 9011 is assessed through an objective standard). Subjective bad faith is not necessary; the attorney must only fail to meet the standard of a "competent attorney admitted to practice before the [pertinent] court." Id. (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823,

830 (9th Cir. 1986), <u>overruled on other grounds</u> by <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384 (1990)).

On this record, it is clear that Appellants did not hold a "good faith belief" that the discharge injunction did not apply to the Im Litigation. Here, the Appellants merely chose to ignore the law and conclude on their own that Appellees were not entitled to the discharge and its protections.

Regardless, the determination of whether the discharge injunction applied to the Im Litigation does not allow for a **subjective** belief, good faith or otherwise. "In determining whether the contemnor violated the stay, the focus 'is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.'" <u>In re Dyer</u>, 322 F.3d at 1191 (quoting <u>Hardy</u>, 97 F.3d at 1390).

<u>Hardy</u>, as adopted by the Ninth Circuit, effectively imposes a strict liability standard with respect to the first element of the willfulness test: "If the court on remand finds, as plaintiff claims, that IRS received notice of Mr. Hardy's discharge in bankruptcy, and was thus aware of the discharge injunction, Mr. Hardy will then have to prove only that IRS intended the actions which violate the stay." <u>Hardy</u>, 97 F.3d at 1390.

In <u>Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)</u>, 328 B.R. 158, 175 (9th Cir. BAP 2005), we highlighted the sanctity of the discharge injunction, stating that once entered, it was "good against the world."

Thus, unless there is a basis other than Appellants' "good

21

faith belief" that Appellee Lee should not have the benefit of the discharge injunction in connection with the Im Litigation, the first prong of the <u>Zilog</u> test was met.

2. <u>Applicablity of the Discharge Injunction in Light of § 523(a)(3)</u>.

Appellants assert, relying on § 523(a)(3), that the injunction was not applicable to the Im Litigation because Appellant Im's claim was not included in either the chapter 11 schedules or the chapter 7 conversion schedules. If this were true, Appellant Im's alleged claims for breach of contract and fraud might have survived entry of the discharge, an issue which could have been brought as a declaratory judgment claim. However, the bankruptcy court determined that § 523(a)(3) does not provide a defense to Appellants where Appellant Im had <u>actual knowledge</u> of the bankruptcy case in time to avail himself of the protections of the Bankruptcy Code with respect to his alleged claims. We agree.

3. <u>Applicability of the Discharge Injunction in Light of § 523(a)(19)</u>.

As noted by the bankruptcy court, § 523(a)(19) authorizes a creditor to pursue certain claims, specifically those stemming from securities fraud, against a debtor notwithstanding the discharge injunction. Appellants admitted in the context of the motion to reopen that only two of the claims for relief in the Im Litigation were for violation of California securities laws: the claim for rescission of stock purchase asserted against ISIF pursuant to Cal. Corp. Code § 25501, and the derivative joint and several liability

22

claim asserted against Appellee Lee and Ms. Park pursuant to Cal. Corp. Code § 25504. Appellants further conceded that the particular claims asserted under California securities laws were determined and dismissed by the State Court's ruling on a motion in limine Appellees had filed in March 2013.

In a disingenuous attempt to avoid a contempt finding for having proceeded against Appellee Lee on non-securities related claims, Appellant Song asserted his argument that the Im Litigation pursued only a single "claim for relief" with nine separate "counts," all of which arose under a common nucleus of operative facts. This interpretation of the Im Litigation runs counter to the well-known policy regarding exceptions to discharge. The Ninth Circuit has admonished in the context of § 523(a)(19) that it, like all other Bankruptcy Code provisions which impact the scope of a debtor's discharge, is to be construed narrowly. See Sherman v. SEC (In re Sherman), 658 F.3d 1009, 1015 (9th Cir. 2011), abrogated on other grounds by Bullock v. BankChampaign, N.A., --- U.S. ---, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013): "[T]he Supreme Court has adopted a rule of construction interpreting exceptions to discharge narrowly. See Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) ('[E]xceptions to discharge should be confined to those plainly expressed')." The bankruptcy court did not err when it ruled that each theory of recovery should be examined separately to determine whether it fell within the § 523(a)(19) exception to discharge.

23

B.  Appellants Intended the Actions Which Violated the Discharge Injunction.

By initiating and pursuing the Im Litigation which asserted claims for relief against Appellee Lee personally, the Appellants violated the discharge injunction. The record is clear that they intended those actions. Not even warnings of contempt and sanctions derailed their intent to continue the Im Litigation to judgment.

Appellee Lee proved both elements of the willfulness test, and the bankruptcy court properly found the Appellants in contempt for violating the discharge injunction.

C.  The Bankruptcy Court Did Not Abuse Its Discretion in Determining the Amount of Sanctions.

The Appellants assert on appeal that the bankruptcy court erred by holding a "prove-up" hearing rather than an evidentiary hearing to determine the amount of alleged damages. We disagree. Rule 9017 provides that Civil Rule 43 applies in contested matters in bankruptcy cases. Civil Rule 43 authorizes the court to hear the matter on declarations. Both the Fee Statement and Appellants' response to it were supported by declarations.

The Appellants assert there was no evidence, in the form of either a retainer agreement, bills, or payment records, that the Appellees ever owed Mr. Henshaw attorneys' fees as a consequence of the Im Litigation. They posit that other than in a contingent fee arrangement, no attorney would represent a client for fifteen months without payment. We deem it unlikely, however, that Mr. Henshaw would have entered into a contingent fee arrangement with the

24

Appellees in conjunction with his defense of them against the allegations of the State Court complaint. There is no evidence that there was a counterclaim filed seeking damages on behalf of the Appellees. Further, Mr. Henshaw's declaration in support of the Fee Statement provides some evidence both as to the fees incurred and of the clients he represented in the Im Litigation. Appellants themselves have acknowledged that Mr. Henshaw represented the Appellees in the Im Litigation, and there is no question he did so in the contempt proceedings before the bankruptcy court.

The Appellants also assert that the bankruptcy court abused its discretion in the award of sanctions by failing to consider the "undeserving debtor factor." They contend that Appellee Lee created the problem that led to the violation of the discharge injunction. They assert, in effect, that Appellee Lee failed to include Appellant Im on any of the bankruptcy schedules, continued business as usual after the discharge was entered and failed to raise the issue of the discharge injunction until just before trial.

The record reflects that the bankruptcy court did in fact balance the equities, by expressly giving the Appellants the benefit of every doubt that they did not know until February 28, 2013, that the discharge injunction barred many claims for relief in the Im Litigation. This determination of the bankruptcy court is inconsistent with the facts throughout the record. Appellant Im had actual knowledge of the Bankruptcy Case within weeks after it was filed, but he did nothing but disbelieve that it existed. Nevertheless that actual knowledge charges him with notice of entry

25

of the discharge. Appellant Song worked on behalf of another client to obtain a revocation of the discharge. He clearly knew of the discharge injunction at or shortly after the time it was entered.

It is a disturbing premise that voluntary ignorance of the implications of the bankruptcy discharge injunction can provide a defense against sanctions. This is in effect what the bankruptcy court allowed when it set February 28, 2013 as the date after which the Appellants are accountable for contempt for violating the discharge injunction. Appellant Im decided for himself either that the Bankruptcy Case was not real or that Appellee Lee was not entitled to the benefit of the discharge injunction. Appellant Song similarly refused, to the point of misconstruing case law in a manner that he believed allowed him to proceed as he wanted, to credit the discharge injunction. The various theories argued to both the bankruptcy court and this Panel highlight his willful refusal to recognize that the injunction "applied" to the claims asserted in the Im Litigation, either because the claims were outside the scope of the discharge as he interpreted it or because Appellee Lee was undeserving of the protection Congress and the bankruptcy court granted him upon the entry of the discharge.

Finally, Appellants argue that the amount of the reduction in the fees based upon Mr. Henshaw's representation of other defendants was not adequate where it was based on Mr. Henshaw's estimate during colloquy of how much time was incurred in defense of those other defendants. We note, however, that Appellants' pleadings expressly conceded that the amount of time in the Fee Statement attributable

26

to the other defendants was $11,080.

On this record we cannot say that the bankruptcy court abused its discretion to the detriment of Appellants in calculating the amount of sanctions.[7]

## VI. CONCLUSION

Appellants steadfastly refused to honor the discharge entered in the Appellees' Bankruptcy Case. Their convoluted assertions on appeal reflect their continuing refusal to accept the meaning and scope of a bankruptcy discharge.

The bankruptcy court did not err when it determined that Appellants violated the discharge injunction by prosecuting claims for relief against Appellee Lee that were discharged.

The bankruptcy court did not abuse its discretion to the detriment of Appellants in awarding sanctions, jointly and severally against the Appellants, in the amount of $50,098.50. To the extent the judgment itself was entered in the amount of $50,000.00 it is inconsistent with both the bankruptcy court's oral ruling and the order awarding sanctions. The amount appears to be a scrivener's error which the bankruptcy court is authorized to correct upon receipt of an amended form of judgment from Appellees.

We AFFIRM the bankruptcy court's entry of the sanctions order.

---

[7] Appellees did not cross-appeal as to the amount of sanctions awarded by the bankruptcy court against the Appellants. Accordingly, we do not consider whether the bankruptcy court abused its discretion in making an award of sanctions that was too low in the circumstances of this case.

27